**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID T. SHULICK** | : | **CIVIL ACTION NO. 02 cv 8483** |
| **INDIVIDUALLY AND ON BEHALF** | : | **CIVIL ACTION NO. 02 cv 1127** |
| **OF ALL OTHERS SIMILARLY** | : | **CONSOLIDATED** |
| **SITUATED** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CLASS ACTION COMPLAINT** |
| **vs.** | : | **AND DEMAND FOR JURY TRIAL** |
| | : | |
| **CBC Companies, Inc. individually and** | : | |
| **D/B/A CBCS and CBCS NATIONAL,** | : | **CLASS ACTION** |
| **INC. and Credit Bureau Collection** | : | |
| **Services, Inc., individually and D/B/A** | : | |
| **CBCS and CBCS NATIONAL, INC.** | : | |
| | : | |
| **Defendant** | : | |

**ORDER**

ANDAND NOW, this  day of       AND NOW, this  day of         AND NOW, this  day of

SummarySummary Judgment, Defendants  responseSummary Judgment, Defendants  response thereto,Summa

MotionMotion for SummaryMotion for Summary Judgment and the supporting memoranda andMotion for Summa

respectiverespective parties hereto, it is hrespective parties hereto, it is herespective parties hereto, it is hereby

isis hereby entered against both Defendants jointlis hereby entered against both Defendants jointly and sever

ThousandThousand ($500,000) Thousand ($500,000)  in favorThousand ($500,000)  in favor of Plaintiff and the

24, 2003 and Defendants  Cross Motion for Summary Judgment is denied.

"        ItIt is further ORDERED that Plaintiff is directed toIt is further ORDERED that Plaintiff is dire

           next ten (10) days for approval a proposed form of Notice to the Class;

"        PlaintiffPlaintiff is further directed to submit to this Court for Plaintiff is further directed to sub

petitionpetition setting forth its fees and costs in apetition setting forth its fees and costs in acc

Federal Fair Debt Collection Practices Act, and

" DefendantsDefendants are directed to within the next ten (10) days provide Defendants are dir

useableuseable eluseable electronic dauseable electronic data base of all the names and addresse

Class for use in the sending of appropriate notice to the Class.

**BY THE COURT:**

_____

J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **DAVID T. SHULICK** | : | **CIVIL ACTION NO. 02 cv 8483** |
| **INDIVIDUALLY AND ON BEHALF** | : | **CIVIL ACTION NO. 02 cv 1127** |
| **OF ALL OTHERS SIMILARLY** | : | **CONSOLIDATED** |
| **SITUATED** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CLASS ACTION COMPLAINT** |
| **vs.** | : | **AND DEMAND FOR JURY TRIAL** |
| | : | |
| **CBC Companies, Inc. individually and** | : | |
| **D/B/A CBCS and CBCS NATIONAL,** | : | **CLASS ACTION** |
| **INC. and Credit Bureau Collection** | : | |
| **Services, Inc., individually and D/B/A** | : | |
| **CBCS and CBCS NATIONAL, INC.** | : | |
| | : | |
| **Defendant** | : | |

_____

**SUR REPLY TO
DEFENDANTS  RESPONSE TO PLAINTIFF S MOTION FOR
SUMMARY JUDGMENT
AND PLAINTIFF S RESPONSE TO DEFENDANTS
CROSS MOTION FOR SUMMARY JUDGMENT**

ForFor the reasons For the reasons statFor the reasons stated in the attached Memorandum in Support of

Defendants Defendants  Response to Plaintiff s Motion for Summary Judgment andDefendants  Response to Plaintiff s Mot

CrossCross Motion for Summary Judgment, which is hereby incorporated by reference, PlCross Motion for Summary Ju

SummSummarySummary JudgmenSummary Judgment should be granted and Defendant s Cross Motion for Summary J

denied.

By:_____/s/_____

Edwin M. Goldsmith, III, Esq.
Attorney ID No. 04429
Attorney for Plaintiff and the
Certified Class
1635 Market Street 19th Floor
Philadelphia, PA 19103
(215) 563 4949

Dated: December 17, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| DAVID T. SHULICK | : | CIVIL ACTION NO. 02 cv 8483 |
| INDIVIDUALLY AND ON BEHALF | : | CIVIL ACTION NO. 02 cv 1127 |
| OF ALL OTHERS SIMILARLY | : | CONSOLIDATED |
| SITUATED | : | |
| | : | |
| Plaintiff | : | |
| | : | CLASS ACTION COMPLAINT |
| vs. | : | AND DEMAND FOR JURY TRIAL |
| | : | |
| CBC Companies, Inc. individually and | : | |
| D/B/A CBCS and CBCS NATIONAL, | : | CLASS ACTION |
| INC. and Credit Bureau Collection | : | |
| Services, Inc., individually and D/B/A | : | |
| CBCS and CBCS NATIONAL, INC. | : | |
| | : | |
| Defendant | : | |

---

MEMORANDUM IN SUPPORT OF SUR REPLY TO
DEFENDANTS  RESPONSE TO PLAINTIFF S MOTION FOR
SUMMARY JUDGMENT
AND
IN SUPPORT OF PLAINTIFF S RESPONSE TO DEFENDANTS
CROSS MOTION FOR SUMMARY JUDGMENT

## I. Sur Reply

**A.A. DefendantsA. Defendants Had No Procedure to Protect AgainstA. Defendants Had No Proce**

**thisthis Case.** Defendants CBC Companies, Inc **("CBC")** and Credit Bureau Collection Services, Inc.

**("CBCS")** argue that whether a party implemented sufficient procedures to argue that whether a party implement

thethe context of the "bona fidethe context of the "bona fide error" defense isthe context of the "bona fide error"

toto determine, citing *Narwick v. Wexler,* 901 F. Supp. 1275 (N.D. Ill, 1901 F. Supp. 1275 (N.D. Ill, 1995). 9

involvedinvolved the motion forinvolved the motion for summary judgment brought by  a *defendant* who who so

- 4 -

ofof the bona fide error defense, with the Court holding that the facts that he had asserted were

insufficient to grant summary judgment.

InIn the instant case, it is the Plaintiff who has shown iIn the instant case, it is the Plaintiff who has sh

testimonytestimony that the Defendants had no procedure whatsoever which would qualify as "reasonably

adaptedadapted to avoid any such error."[1]  It is important to note that it is the Defenda  It is important to note

burdenburden to prove "by a preponderance of evidence" that suchburden to prove "by a preponderance of eviden

suchsuch "preponderance of the evidence" does not existsuch "preponderance of the evidence" does not exist as a m

forfor a jury to decide.  This is especially so wfor a jury to decide.  This is especially so when tfor a jury to dec

occurred,occurred, **CBC** employee Michael Frabott, admitted that there was ***no prno procedurno procedure***

whether a dollar amount appeared through the window of an envelope being sent to a debtor.

"The"The witness was asked whether he put somebody at the end "The witness was asked whether he pu

once the envelope was stuffed and stamped and ready toonce the envelope was stuffed and stamped and r

is no dollar amount displayed in the window.  His response was as follows:

> A.      ***Yeah.Yeah.   We ve   we veYeah.   We ve   we ve aYeah.   We ve   we ve added to t
> looking for***, if that s what you re asking for.

> Q.      Yes.  And when did you do that?

> A.      WhenWhen this wasWhen this was made   whenWhen this was made   when I was made
> that in fact could be a violation.

> Q.      Okay.Okay.  Would you agree then, thatOkay.  Would you agree then, that there Okay.  V
> forfor this, thefor this, the dollar amount showing through the window,for this, the dollar amount s
> of the lawsuit?

MR. BRIGGS:          objectiobjectionobjection to the form of the question.  The witnessobjection to th
testiftestifiedtestified thatestified that they had a procedure to check for things that were out of

---

[1] 15 USC §1692k(c)

ordinary.

MR. GOLDSMITH:   I only had that he checked for the address and check whether it was upside-down.  But I am asking him whether, before the lawsuit hit, did he have any procedure to check for through the window.

MR. BRIGGS:          okay.

THE WITNESS:        **No.**

(Frabott deposition, p. 64, ll. 7-24, p. 65, ll. 1-12.) (Emphasis added)[2]

Martin Groves, who worked under the supervision of Michael Frabott,[3] testified that the spot checking after the stuffing of letters into envelopes was completed was as follows:

Q.        When the finished product -- i.e., the spits out at the end of the machine, did you institute any procedure those envelopes?

A.        Yes.

Q.        And what was that procedure?

A.        We go over with the mail room operators, that when they are pulling the mail off the them as they re putting them into the trays to deliver.

Q.        What are they supposed to be spot checking for?

A.        Deliverable addresses.

Q.        Anything else?

A.        Just to make sure that it s consistent -- return and a mailing address showing up in the window.

Q.        Nothing else?

---

[2] See Plaintiff s Memorandum in Support of Motion for Summary Judgment, p 16

[3] Groves deposition, page 17, ll 20-21

Mr. Briggs:     What do you mean by -- you say nothing else?

By Mr. Goldsmith:
Q.              That s your answer, then.  Okay.

Q.              AfterAfter tAfter theAfter the event took place and you became aware
                event,event, did you initiate any new procedures, when the
                materialmaterial came out ofmaterial came out of thematerial came out of t
                its process through Pitney-Bowes machine?

A.              TheThe only thing that I -- thatThe only thing that I -- that The only thir
                instructedinstructed theminstructed them to be more aware of what to look
                envelopesenvelopes and envelopes and to brienvelopes and to bring any
                found.

Q.              Well,Well, what were they supposed -- what did you instruct
                them to be more aware of?

A.              Anything other than a return and mailing address.

Q.              AndAnd youAnd you instiAnd you instituted that policy only after the e
                correct?

A.              Yes.Yes.  I told them to be more cognizant onYes.  I told them to be
                looking for.

Groves deposition, page 29, lines 9-24
Page 30, lines 1-24, page 31, lines 1-12

     Defendants Defendants  Counsel then unsuccessfully attempted to change  Mr. Grove s testimony.[4]

However, Defendants obviously chose to leave out the immediately following testimony:

Q.       Okay.Okay.  After the events and tOkay.  After the events and the subsOkay.
         thatthat they wethat they were that they were more cognizant as to what to look for.  D
         that testimony?

A.       Correct.

_____

[4] See Defendant s Memorandum, page 16

Q.      WhatWhat did, did you explain to What did, did you explain to themWhat did, did yo
ofof seeing something in the window other than the return address and the
mailing address?

A.      Yes, I did.

Q.      Okay.Okay. Okay.  However, both before and after the incident -- or,Okay.  Howeve
theythey were still spot-checking to make sure that they just had the returthey were s
address and a mailing address?

A.      Correct.  That, that was showing.

Grove s deposition, page 44, lines 7-24 and page 45, line 1.

DefendantsDefendants thenmake an incredible and blatantlyDefendants then make an incredible and blatan

amountamount showing through the addreamount showing through the address window woamount showing th

address.address. If spotted by a CBC employee during the spot-checking process, the letteraddress. If spotted by a C

whichwhich is what occurred in this case."which is what occurred in this case." However, Mr. Groves clearlytestifie

an instance where the dollar amount showed through.

Q.      DoDo you recall any instancesDo you recall any instances where tDo you r
throughthrough before -- and it was broughtthrough before -- and it was brought to your att
took place?

A.      No.

Grove s deposition, page 46, lines 21-24, page 47, lines 1 and 2.

Further,Further, Mr. Frabott testified thatFurther, Mr. Frabott testified that it was a misplaced bar code that alerted

letter, making no mention whatsoever of an amount showing through the window.[5]

AliceAlice Bucy s testimony as to the proceduresAlice Bucy s testimony as to the procedures followedAl

credible,credible, because she was obviously coached to testify to matters which she credible, because she

---

[5] Frabott Deposition, Pages 60-61

knowledge.knowledge. On pages 41 and 42 of her deposition, her testimonyknowledge. On pages 41 and 4

seemingly knowledgeable testimony of the spot checking of envelopes is as follows:

16      Q.  Did you personally observe

17   people spot-checking it?

18      A.  No.

19      Q.  Have you ever personally

20   observed people spot-checking?

21      A.  No.

22      Q.  Where do you obtain your

23   information that these envelopes are,

24   or the documents are spot-checked?

0042

1      A.  From the data center.

2      Q.  Who at the data center?

3      A.  Mike Frabot and Marty

4   Groves.

TheThe absence of any company procedure was emphasized in the testimonyThe absence of any company p

ofof Collections Briaof Collections Brianof Collections Brian of Collections Brian Strikerof Collections Brian Strike

Page 112 (August 26, 2002)

3      Q.   Is there a company policy where
4   letters are mailed back to the company to
5   see how they look in the mail?
6      A.   No, there's no policy.
7      Q.   So you simply did this on your

- 9 -

8   own without any company direction?
9       A.   Correct.
***
Page 114 (August 26, 2002)


2       ***Q.    Did you follow this procedure***
3   ***with any of the 2,800 or so letters that***
4   ***were sent out in this batch that are on***
5   ***that list?***
6       ***A.   No.***
7       ***Q.    To your knowledge, anyone else***
8   ***in the company do that?***
9       ***A.    Not to my knowledge, no.***
***
Page 116 (August 26, 2002) (emphasis added)


19      Q.   Other than this handout that was
20   attached to the disclosures of all that's
21   sitting on a shelf somewhere in the
22   company, and these seminars or conferences,
23   and your just mailing stuff to yourself,
24   mailing collection letters to yourself,

25   were there any other procedures

Page 117 (August 26, 2002)

1   established, to your knowledge, by the
2   company to avoid violating this fair debt
3   collection law?
4       **A.   Not that I'm aware of..**  (Emphasis added)


WhenWhen Mr. Striker wasWhen Mr. Striker was recalled to testify on SeptemberWhen Mr. Striker was recalled

procedureprocedure of mailing letters toprocedure of mailing letters to himself was ***much lessmuch less than per***

thatthat included Letter Number 78, it only occurred on ***one occasion***  prior  prior to the inception of this

Action!

Page 51, September 25, 2003

17      Q.   Your sending of the letters

- 10 -

18   to yourself in an envelope via United
19   States Postal Service, how often --
20   did that just occur with these
21   letters in Exhibit I?
22      A.  Yes.
23      Q.  Did you ever do it again
24   after the year 2000?

Page 52

1      A.  Yes.
2      Q.  When?
3      A.  I'm looking.  August of
4   2002.
5      Q.  August of 2002.  That was
6   after the letters were sent to
7   Mr. Shulick; isn't that correct?
8      A.  Yes.
9      Q.  So between October of the
10   year 2000 and August of 2002, you
11   didn't send any letters to yourself?
12         MR. BRIGGS:  Actually,
13   previously, Ed, he said December of
14   2000.
15         MR. GOLDSMITH:  Okay.
16   BY MR. GOLDSMITH:
17      Q.  Between December of 2000
18   and August of 2002, you didn't send
19   any of the Letter Master letters to
20   yourself; is that true?
21      A.  To the best of my
22   knowledge, yes. [6]

Further,Further, a general policy toFurther, a general policy to promote awareness of the FDCPA  is not the

Joyner of this District had in mind when he stated the following:

TheThe fact that Mr. Needles hasThe fact that Mr. Needles has attended classes to educate himself as toThe
requirementsrequirements says nothing about the sprequirements says nothing about the specirequirem
ensureensure they complied with the FDCPA. The instant inquiry assensure they complied with the FD

―――――――――――――

[6]See Plaintiff s Memorandum in Support of Motion for Summary Judgment, p 20

- 11 -

collectorcollector iscollector is aware ofcollector is aware of the FDCPA's requirements, and concerns the p collectocollectorcollector implements so that he complies with the FDCPA. *Adams v. TheAdams v.* *Offices of Stuckert & Yates, et al.*, 926 F. Supp. 521, 529 (E.D.Pa. 1996)

Also,Also, in the most recent case of *Dechert v. Cadle Company,* 2003 U.S. Dist. LEXIS 20772 USDC

SDSD SD InSD Indiana, Indianapolis Division) the Court underscored the concept that verbal training and

periodic review of forms are not the procedures which are mandated by the statute.

InIn the affidavit of Daniel Cadle, defendanIn the affidavit of Daniel Cadle, defendant In the affidavit o terms,terms, to the efterms, to the effecterms, to the effect that employees of The Cadle Company a trainingtraining on the requirements oftraining on the requirements of the FDCPAtraining on the requirem completedcompleted to assure compliance. The defendant portrays tcompleted to assure compliance. T periodicperiodic review as policies and procedures in place anperiodic review as policies and procedu policespolices and procedurpolices and procedurepolices and procedures an error occurred. [*12] Ho shieldshield those who simply misunderstand the oblshield those who simply misunderstand the obli ClarkClark v.Clark v. Clark v. Priority Financial Services, Inc., 2001 U.S. Dist. LEXIS 16900, 2001 WL 11551521155152 (S.D. Ind.1155152 (S.D. Ind. September1155152 (S.D. Ind. September 8, 2001); Bawa v. 20012001 U.S. Dist. LEXIS 782001 U.S. Dist. LEXIS 7842, 2001 WL2001 U.S. Dist. LEXIS 7842, 2 Further,Further, the defendant offers no evidence of whatFurther, the defendant offers no evidence of what thethe policies and procedures in place were designedthe policies and procedures in place were designed to ItsIts assertionsIts assertions are muchIts assertions are much more broad and ambiguous in nature. The Ca merelymerely asserting,merely asserting, in general, that it attempts to make sure it is in compliance with th FDCPA.

Finally,Finally, Mr. Manuel Newburger s alleged expert opinions on the subject areFinally, Mr. Manuel N

inin this case,in this case, are worthless and should be ignored.  Federal Rule of Civil Procedure 26 (2)(A)in this ca

requiresrequires that all expert reports be served no later than ninety (90) days beforerequires that all expert repo

otherwiseotherwise agreed to by all partiesotherwise agreed to by all parties or ordered by the Court in a Rule 16 Sch

hashas ordered that the trial in this case is scheduled for February 2, 2004.   Despihas ordered that the trial in t

DefendantsDefendants servedDefendants served a report on November 28, 2003,Defendants served a report on No

directdirect violation of this clear and unambiguous Rule.direct violation of this clear and unambiguous Rule.  The

RuleRule 26, does not disclose whatRule 26, does not disclose what the expert was paidRule 26, does not disclose v

dates for the expert s deposition.  These  issues related to Rule 26 non-compliance by defendant,

were addressed immediately by plaintiff s

incorporated herein as Exhibit  A  .  Despite this notice, Defendants have taken no steps to

a signed report and have attached an un

Judgment.  Never before has Plaintiff s counsel witnessed such

Rules of Civil Procedure.

Without waiver of the foregoing, the argu

principles of Federal Rules 701 and 70

*Inc.,* 509, U.S. 579 (1993) and its progeny.

Federal Rules of Evidence 702 provides

> If scientific, technical or other specialized knowledge assists the trier of
> fact to understand the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience, training,
> or education, may testify thereto in the form of an opinion or
> otherwise.

The United States Supreme Court in *Daubert* case, specifically held under F

that the trial judge must ensure that a

relevant, but reliable.  Id. at 589.  The Court found that the word  knowledge  as

requires more than subjective belief or unsupported speculation   Id a

testimony must be an app

addition, the Supreme Court held that the Rule 702

connection to the pertinent

- 13 -

determinedetermine at the outdetermine at the outset wdetermine at the outset whether the expert proposing to

underline assist the trier of fact to understand or to determine the fact in issue.

TheThe unsigned, non-compliantThe unsigned, non-compliant report offered by Defendants inThe unsign

standard and Rule 702 as follows:

a. The report does not assist this Court or jury to determine any fact in issue;

b. The report an the opinions expressed in the report are pure speculation;

c. Mr.Mr. Newburger, theMr. Newburger, the report s author, without signing the same,Mr. Newburg

Honorable Court s authority as the trial judge in this litigation.

**B.B.   There could not have been any procedure in place to detect violations of theThere could not have been a pointpoint of stuffing the envelopes, because ofpoint of stuffing the envelopes, because of the manifest lack of know persons charged with sending out correct mailings.**

DefendantsDefendants make a large point that whether or not the employees at the **CBC** data center data center w

checkingchecking the envelopes had knowledge ofchecking the envelopes had knowledge of the FDCPA is not rele

bothboth the same before and after the event and that the procedures in place in fact caught the error.

However, this argument completely ignores the language of the statute that states:

(c)(c) Intent. A debt collector may not be held liable in any action brought under this title [15
USCSUSCS §§§§ 1692 etUSCS §§§§ 1692 et seq.] ifUSCS §§§§ 1692 et seq.] if the debt collector shows by a pr
thethe violation was not intentional and resthe violation was not intentional and resulted frothe violation was no
*maintenancemaintenance of procedures reasonably adapted to avoid any smaintenance of procedures re*
added).

HowHow canHow can aHow can a procedure be reasonably adapted to avoid error under the FDCPA be maintaine

inin charge of its maintenance are completely ignorant of what in charge of its maintenance are compl

Defendants Defendants  argumentDefendants  argument simply is nonsensical.  Further, the so-calledDefendants

barbar code, not thebar code, not the error in the FDCPA.  See Frabott Deposition, Page 60. bar code, not the erro

barbar code, she inadvertently and without realizing it also corrected the FDCPA problem. See Bucy

Deposition,Deposition, Pages 53 and 54.  Accordingly, the lack of knowledgeDeposition, Pages 53 and 54.  Accor

whowho were perfowho were performing the very functions which led to the error underscores the total lack

procedureprocedure reasonably adapted to avoid the error. procedure reasonably adapted to avoid the error.

knowledgeknowledge ofknowledge of the FDCPA comes at the end of Mr. Frabott s depositionknowledge of the F

waswas madewas made aware of the "problem" he made additions to thewas made aware of the "problem" he made

64.

**C.     Plaintiff s Request for $500,000.00 in damages should be granted.**

InIn this case, Plaintiff is demanding damages in the amount of $500,000.00In this case, Plaintiff is

1515 USCA 1692k(a)(2)(B) for a15 USCA 1692k(a)(2)(B) for a class numbering 2,889 members.  Defendants  co

basedbased on a false assumption, found nowherebased on a false assumption, found nowhere in Plaintiff s Memo

assumesassumes that each class member would be entitledassumes that each class member would be entitled to the

byby the statutory cap to $500,000.00.  Quite the conby the statutory cap to $500,000.00.  Quite the contrary,

entitledentitled to the total amount entitled to the total amount perentitled to the total amount permitted by

$500,000.00.$500,000.00.  Five Hundred Thousand Dollars$500,000.00.  Five Hundred Thousand Dollars ($500,0

aa per member damage award of $170.00, far less thana per member damage award of $170.00, far less than thea pe

to if they had individually brought their actions.

Therefore,Therefore, Defendant s assumption that $500,000.00 is an amount only to be awarded in an

egregiousegregious case is inconsistent with the factegregious case is inconsistent with the fact tegregious

$500,000.00,$500,000.00, will receive $500,000.00, will receive only$500,000.00, will receive only $500,000.00, w

bebe entitled in anbe entitled in an individual action.  Defendants cite *Harvey v. United Adjusters*, 509 F., 509 F. S

(D.Or. 1981) for the proposition that only aggravated cases of pers[onal] merit $1,000.00 of damages, but the $500.00 awarded to the individual in that case is far what these individuals in the instant case $500,000.00 to the class.  Therefore, the *Harvey* case is of no support to

Defendants cite *Kobs v. Arrow Service Bureau*, 134 F.3d 39 Defendants as 2002] and *Sibley v. DeKalb Collection Service*, 67 F.2d 830 (11th Circuit, 1982 the proposition that even if this Court finds summary judgment, the pro to a jury.  Neither of these cases resulted in such a holding, and neither of these cases involved the situation where a court had already determined summary judgment on the issu by nature of the statute, are intermixed with the factors necessary for determination of damages.  For example, it would be an illogical result if that an error occurred for which there was no defen prevent such error, and then a jury committed in error.   Clearly in a situation such as summary judgment in a situation where there has b failed to maintain procedures which would be reasonably adapte be an inconsistent result, and certainly not intended by statute, that the jury would come no liability because the act was not intentional.  Such a result would render meaningless the provisions requiring a showing by the preponderance of the evidence t procedures reasonably adapted to preventing the error in the first place.

Further, it makes no sense to interpret th finding of summary judgment of liability, to

- 16 -

damagesdamages should be awarded.  If such determinationdamages should be awarded.  If such determination is p

thethe requirements which the Defendants must meet in order to successfully sustain athe requirements which the

defense.

Further,Further, inFurther, in this caseFurther, in this case Defendants have admitted to sending out 2,889 le

statute[7] which is certainly not a small number of persons which is certainly not a small number of persons who suf

thethe rethe result of Defenthe result of Defendants failing to have a preventative procedure in place.  Furth

stipulatedstipulated that one percent of their nestipulated that one percent of their net worstipulated that one

resources to cover the amount claimed.

## II.  Defendant CBC s Cross  Motion for Summary Judgment Should Be Denied.

ItIt wasIt was only when**CBC** was completelyunmasked inwas completelyunmasked in the depositions of N

Frabott,Frabott, Groves and FaehnlFrabott, Groves and Faehnle as an activeFrabott, Groves and Faehnle as a

PlaiPlaintiffPlaintiff Plaintiff and the Class that it now argues that it was a mere service provider for its subs

**CBCS**,, and thereforenot liable, and therefore not liable for violations of the FDCPA..  No such affirmative defens

inin iin its Answer.  If such an argument was accepted, this would absolutely  gut  the statutin its Answer.  If s

parentparent corporation could form a subsidiaryparent corporation could form a subsidiary parent corpor

responsibilityresponsibility for mailing out the actual letters and envelopes to theresponsibility for mailing out

would violate the provisions of the Fair Debt Collection Practices Act.

Further,Further, in all the cases cited in this section, nowhere does such aFurther, in all the cases cited in thi

isis a parent subsidiary relationship betweenis a parent subsidiary relationship between the parties, such that the pa

material,material, as opposed to the wholly ownedmaterial, as opposed to the wholly owned subsidiary designated as

---

[7] Defendant s Memorandum, Page 17

- 17 -

exonerated from Fair Debt Collection Practice Act violations.

The case of *Jenkins v. Heintz*, 25 F.3d 536, 538-39 (7th Cir. 1994) is cited for the pro[position] that it is the Defendant s activities that determine whether it is[...] *Jenkins* case is taken totally out of context. The issue in that case w[as...] in debt collection practice was subject to the Fair [...] had ruled otherwise, finding that the law was not intended to govern attorneys enga[ged...] practice of law. However, the *Heintz* case was granted review by the United States Supreme [...] and the Supreme Court affirmed the lower court in *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489;

131 L. Ed. 2d 395 (1995) when it held that the Act applies to lawyers engaged in consume[r...] collection litigation. This case did not involve a situatio[n...] corporation and its s[ub]corporation and its subsidiary were working together to pre[...] distribute written material which violated the Fair Debt Collection Pra[ctice...] examined in the *Heintz* case involved an interpretation of whether the statute applied to attorneys,

after the attorney exception was removed from the statute in 1986, and has nothing to[...] facts at hand.

Further, there is a host of credible evidence that **CBC** had virtually complete economic and transactional control over **CBCS** in order to make **CBC** li[able...] FDCPA. On Page 13 of Defendant's memorandum, a full discus[sion...] employee, James Faehnle, participated in a review process[...] replaced with a one-windowed envelope. This participation was[...] not only Mr. Faehnle but also **CBCS** employees.

AndAnd if there is any question as to whether **CBC** controls **CBCS,** one need only read through

thethe deposition of Mr. Dirk Cantrell, which Defthe deposition of Mr. Dirk Cantrell, which Defethe depositio

examplexample,example, Mr. example, Mr. Cantrell testifies that he currently holds the office of controller a

ttreasurertreasurer of **CBC** (Cantrell deposition, Page 15, Lines 4-6).  He also admits that he is S (Cantrell dep

Treasurer of **CBCS**, and that he continues to hold, and that he continues to hold that position.  See Cantrell depos

Lines 9-21.

Mr.Mr. Cantrell identified Larry Ebert asMr. Cantrell identified Larry Ebert as the President of **CBCS**.  See.

15,15, Lines 22-25, Page 16, Line 1. 15, Lines 22-25, Page 16, Line 1.  Mr. Ebert indicated in his deposition taken o

thatthat he was also Senior Vice President of **CBC**.  See Ebert.  See Ebert deposition.  See Ebert deposition dated Se

33-3433-34 excerpts of which are attached hereto as Exhibit "B" and incorporated herein b33-34 excerpts of wh

Mr. Cantrell also testifiedMr. Cantrell also testified that he reports to William H. Price.  CantrellMr. Cantrell also

8-14.8-14. 8-14.  Mr. Cantrell8-14.  Mr. Cantrell identified William H. Price as the President of **CBC**.  Cantrell De

31,31, ll 8-9. Mr. Cantrell also admitted that for the year 2002 as31, ll 8-9. Mr. Cantrell also admitted that for the y

diddid not report to anybody.  Cantrell deposition, Page 19, Linesdid not report to anybody.  Cantrell deposition,

notnot report to Mr. Ebert.  Mr. Ebert indicated in his deposition takennot report to Mr. Ebert.  Mr. Ebert indicated

too reports to Mr. Price.  See Ebert deposition, pp. 33-34 .

Mr.Mr. CantrellMr. Cantrell also testified that the stock of Credit Bureau Collection Services, Inc. isMr. Ca

by **CBC**.  Page 20, Lines 17-25.  He also testified as follows as to the purpose of forming CBCS:

Q:     So,So, is it then your testimony that one ofSo, is it then your testimony that one of the purpos

ollectionCollection Services, Inc. was to protect against liability undCollection Services,

Collection Practices Act?

**A:**     **Yes.**

Cantrell deposition, Page 25, Lines 4-8.

Mr.Mr. Cantrell also testified that before **CBCS** was formed, **CBC** was i was involved was involved in

DebtDebt Collection and the recipient of a suitDebt Collection and the recipient of a suit against it for violation o

Page 27, Cantrell deposition, Lines 8-15.

WhenWhen asked if the directWhen asked if the directors of **CBCS** for the year 2002, Mr. Cantrell res

namesnames William B. Pricenames William B. Price and names William B. Price and William H. Price.  Cant

aaskedasked who the directors of **CBC** were as of 2002, Mr. Cantrell replied, "William B. Price,

WilliamWilliam H. Price, BenjaminWilliam H. Price, Benjamin B. Price, JonathanWilliam H. Price, Benjamin B. P

by familiar ties such as father/son.  Cantrell deposition, Page 30, Lines 6-15.

Mr.Mr. CanMr. CantMr. Cantrell also testified that in the year 2002 **CBCS** did not hold any corporate m

where Minutes were taken, norwhere Minutes were taken, nor did they hold any such meetings for the year 2001

WhenWhen Mr. Cantrell was asked how the proportionate share of office expenses waWhen Mr. Cantrell wa

asas between **CBC** and **CBCS**, he indicated that, he indicated that the proportion was based, he indicated that the

basedbased on the amount of office space.  No rbased on the amount of office space.  No rent wbased o

deprecation expense.  Cantrell deposition, lines 1-19, page 44

WhenWhen Mr. CaWhen Mr. CantrellWhen Mr. CantrellWhen Mr. Cantrell wasWhen Mr. Cantrell was Whe

byby **CBC** to **CBCS**, he indicated that these included, he indicated that these included general, he indicated that the

otherother generalother general management expenses, calculated as a percentage of **CBCS** s sales.  s sales.  He ac

this was a fixed percentage.  Cantrell deposition, page 49, lines 2-25

WhWhenWhen askWhen asked to describe the services that **CBCS** received for the 6 percent, Cantrell a

reiteratedreiterated management expertise, accountingreiterated management expertise, accounting expertise,reiter

54, lines 6-13

AlthoughAlthough Credit Bureau Collection Services, IncAlthough Credit Bureau Collection Services,

withdrawalswithdrawals from the account accordingwithdrawals from the account according to Mr. Cantrell to rei

on its behalf.  Cantrell deposition, page 56, lines 6-13

PayrollPayroll is handled directly through **CBC** thrthrough athrough a central payroll account.   Ca

deposition, page 57, lines 7-13

EvenEven insurance is allocated among theEven insurance is allocated among the subsidiaries.  TheEven in

deposition, page 58, lines 20-25

DividendDividend paymentsDividend payments by **CBCS** were up streamed to **CBC** occurred in year 200

surplussurplus available in **CBCS** at that time.  Cantrell at that time.  Cantrell deposition, page 90, lines 7 and 12.

susurplussurplus availabsurplus available in 2001, and therefore no dividend.  Cantrell deposition, page 90, lin

CantrellCantrell further explained that although on the booksCantrell further explained that although on the books

inin the company at the end of the year was tied up between cash and accounts receivabin the company at th

dividend was calculated at that time.  Cantrell deposition, page 91, lines 2-6.

It is obvious from the above testimony thatIt is obvious from the above testimony that **CBCS** was formec

purposepurpose of attempting to shield the Pripurpose of attempting to shield the Price fapurpose of attempting

underunder the complete control of offunder the complete control of officers of **CBCCBC** and functions wit

finances or expenses, the latter of which are determined *ad hoc* for the convenience of **CBC.**

Further,Further, Exhibit C-7 and Exhibit C-2 of the Cantrell depositFurther, Exhibit C-7 and Exhibit C

Memorandum,Memorandum, makeMemorandum, make it clear that the very letter sent to the class was on letter

owned exclusively by **CBC** and therefore sent to Plaintiff and the class by **CBC.**

### III.  Conclusion

ForFor the forgoing reasonsFor the forgoing reasons Plaintiff s MotionFor the forgoing reasons Plaintiff

Defendants  cross motion for Summary Judgment should be denied.

Respectfully submitted,

_____/s/_____

Edwin M. Goldsmith, III, Esquire

Counsel for Plaintiff and the Certified Class

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID T. SHULICK** | : | **CIVIL ACTION NO. 02 cv 8483** |
| **INDIVIDUALLY AND ON BEHALF** | : | **CIVIL ACTION NO. 02 cv 1127** |
| **OF ALL OTHERS SIMILARLY** | : | **CONSOLIDATED** |
| **SITUATED** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CLASS ACTION COMPLAINT** |
| **vs.** | : | **AND DEMAND FOR JURY TRIAL** |
| | : | |
| **CBC Companies, Inc. individually and** | : | |
| **D/B/A CBCS and CBCS NATIONAL,** | : | **CLASS ACTION** |
| **INC. and Credit Bureau Collection** | : | |
| **Services, Inc., individually and D/B/A** | : | |
| **CBCS and CBCS NATIONAL, INC.** | : | |
| | : | |
| **Defendant** | : | |

## CERTIFICATE OF SERVICE

I, I, Edwin M. I, Edwin M. Goldsmith, III, Esq., hereby certify that a true I, Edwin M. Goldsmith, III, Esq., her ReReplyReply Reply ToReply To Reply To DefendaReply To Defendants Response to Plaintiff s Motion for Summ toto Defendant s Cross Motion forto Defendant s Cross Motion for Summary Judgment was filed today andto Defendant s NormanNorman W.Norman W. Briggs, Esq., viaNorman W. Briggs, Esq., via regular first class US mail, on today s date a

Norman W. Briggs, Esq.

Frey, Petrakis, Deeb, Blum, Briggs & Mitts, P.C.

1601 Market Street, Suite 2600

Philadelphia, PA 19103

- 23 -

**THIS DOCUMENT HAS BEEN FILED ELECTRONICALLY AND IS AVAILABLE FOR VIEWING AND DOWNLOADING FROM THE ECF SYSTEM.**

December 17, 2003

By:_____/s/_____

Edwin M. Goldsmith, III, Esq.

Attorney ID No. 04429

Attorney for Plaintiff